UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MILTON RAYMOND HINSON                      CIVIL ACTION

VERSUS                                     NO. 19-10076

MUHAMMAD IQBAL AHMED                       SECTION "E" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Milton Raymond Hinson, is a prisoner currently incarcerated in the Eastern Louisiana Mental Health System ("ELMHS") in Jackson, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 ("Section 1983") against Dr. Muhammad Iqbal Ahmed. Hinson alleges generally that Dr. Ahmed abused his physician's license, breached an unspecified injunction and committed medical malpractice during his medical treatment of plaintiff at ELMHS in May 2016. Record Doc. No. 7 at p. 5, ¶¶ IV, V. Hinson further alleges that he suffered negligent infliction of emotional distress from Dr. Ahmed's treatment. Id. at ¶ IV.

Although Dr. Ahmed is the only named defendant in this matter, Hinson's complaint lists several "related claims" that appear to refer to separate federal lawsuits filed by Hinson. Record Doc. No. 7 at p. 5, ¶ IV. This court's records and those of the Middle District of Louisiana reveal that plaintiff has filed six (6) other Section 1983 lawsuits against various persons and entities involved with his Livingston Parish criminal proceedings and/or the medical care received during his incarceration, all of which have been dismissed without prejudice. Hinson v. Hale, C.A. No. 19-421 (M.D. La. Jun. 26, 2019) (dismissed without prejudice for failure to correct deficient pleadings following notice and opportunity to

appear); <u>Hinson v. 21st JDC</u>, C.A. No. 19-384 (M.D. La. Jun. 11, 2019) (same); <u>Hinson v. Livingston Par. Sheriffs Dept. Internal Affairs</u>, C.A. No. 19-368 (M.D. La. Jun. 6, 2019) (same); <u>Hinson v. Artecona</u>, C.A. No. 19-420, (M.D. La. Jun. 26, 2019) (same); <u>Hinson v. Dorsett</u>, C.A. No. 19-271, (M.D. La. Apr. 4, 2019) (same); <u>Hinson v. Tulane Medical Dept.</u>, C.A. No. 19-10078 (E.D. La. May 2, 2019) (dismissed without prejudice for lack of subject matter jurisdiction).

Plaintiff twice was ordered to file a written statement of facts expected to be offered at trial. Record Doc. Nos. 10, 15. He ultimately filed his response, Record Doc. No. 23, and a motion to amend his complaint, including the amount of compensatory damages he seeks. Record Doc. Nos. 7 at p. 5, ¶ V; 22. In addition, in furtherance of the required screening process described below, I ordered ELMHS officials to provide me with verified copies of plaintiff's medical records. Record Doc. No. 11. Those records have been received, reviewed and separately filed in the record under seal. Record Doc. No. 30.

I.    <u>STANDARDS OF REVIEW</u>

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); <u>Lewis v. Estes</u>, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d Cir. 2004); <u>Martin v. Scott</u>, 156 F.3d 578, 579–80 (5th Cir. 1998). During the screening process, the court may consider and rely upon documents, as long as they are properly identified, authentic and reliable. "'Medical records of sick calls, examinations, diagnoses, and medications may rebut an

inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted). Such complaints by prisoners must be dismissed upon review if they are frivolous, fail to state a claim upon which relief can be granted or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); <u>Shakur</u>, 391 F.3d at 113; <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule

12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992). A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

The claims asserted in plaintiff's complaint are legally frivolous and/or fail to state a claim even under the broadest reading.[1] Accordingly, plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

II.    THE RECORD

A.    Plaintiff's Written Submissions

Plaintiff's written submissions indicate that he was arrested on April 10, 2015; convicted on May 1, 2017; arrested again on April 9, 2018; and that charges are "still pending." Record Doc. No. 7 at p. 3, ¶ III.

Plaintiff alleges that Dr. Ahmed "abus[ed] physician's license, suppl[ied] demand for medical malpractices" and further committed "breach of injunction, negligent infliction of emotional distress [and] medical malpractice in a culpable mental state." Id. at p. 5, ¶ IV. Hinson seeks relief in the form of "compensation of personal injury claim directly traceable to the above causes of action which were "in fact done by [Muhammad] Ahmed in flagrant culpable mental state in May of 2016." Id. (emphasis added). Plaintiff's original complaint

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore, 30 F.3d at 620, and I have done so in this case.

4

sought $18,500 "for damages incurred." Id. at ¶ V. Plaintiff's amended complaint seeks an additional $58,500 in damages, for a total of $77,000. Record Doc. No. 22 at p. 2. He further alleges in his written statement of facts that he is an "'innocent incarcerated inmate' based on a wrongful arrest but not conviction." Record Doc. No. 23 at p. 2. He states that defendant "falsified records grafted to the plaintiffs identification," that "obligatory requirements of court process were not performed legally by state actor, [Muhammad] Ahmed action on behalf of the State of Louisiana" and that plaintiff's Due Process Clause rights were violated. Id. at pp. 4, 8.

      B.    Plaintiff's Medical Records from ELMHS

Plaintiff's verified medical records, Record Doc. No. 30, establish the following treatment history. According to a February 15, 2016 sanity commission report by Dr. Jose Artecona, plaintiff was arrested on June 10, 2015, for possession of methamphetamines and a parole violation when he tested positive for marijuana and amphetamines. Dr. David Hale performed a competency evaluation on plaintiff at the Livingston Parish Jail on January 23, 2016, which concluded that plaintiff was incompetent to proceed to trial or consult his attorneys and recommended that he be admitted to the forensic division of ELMHS for in-patient psychiatric care and competency restoration. Dr. Artecona's February 15 sanity commission report found that plaintiff suffered from mental illness and was not able to understand the legal proceedings against him or assist in his own defense. Dr. Artecona recommended that Hinson be remanded to ELMHS for stabilization, treatment and competency restoration.

Plaintiff initially was admitted to ELMHS from the Livingston Parish Jail as a pretrial detainee on May 6, 2016, pursuant to a pretrial commitment order issued by 22nd Judicial District Court Judge M. Douglas Hughes on March 2, 2016. A patient summary sheet dated May 6–27, 2016, indicates that Hinson was admitted to ELMHS for stabilization based on unspecified psychosis and substance abuse. Hinson's initial psychiatric assessment <u>dated May 6, 2016</u>, states that upon admission to the facility, he met with defendant Dr. Muhammad Ahmed, who diagnosed Hinson with unspecified schizophrenia spectrum disorder and amphetamine and cannabis use disorders. A psychiatric evaluation <u>dated May 6, 2016</u>, states that Hinson received medical care from a multi-disciplinary team of medical professionals upon admission to ELMHS, including psychiatric examination, evaluation and treatment from Dr. Ahmed, and additional evaluation by a nurse and a social worker. Medication records <u>dated May 6, 2016</u>, indicate that Dr. Ahmed prescribed plaintiff with Zyprexa/Zyprexa Zydis, an anti-psychotic medication, to treat his conditions. Lab orders <u>dated May 6, 2016</u>, state that Dr. Ahmed ordered periodic lab work and psychological testing to monitor Zyprexa's effects on plaintiff and to further clarify his mental diagnoses. Plaintiff's treatment history records from May 2016 to the present indicates that **<u>May 6, 2016, was the last date that Hinson received medical treatment from Dr. Ahmed</u>**. These 2016 medical records are the only indications of any time at which defendant saw or treated plaintiff.

A doctor's order dated May 26, 2016, indicates that Hinson was discharged from ELMHS to the Livingston Parish Jail by his treating psychiatrist, Dr. Clay Kelly. Dr. Kelly's

discharge summary dated September 1, 2016, states that Hinson remained on his prescribed medication at the time of the May 26 discharge and that he would be provided with continued medical care at the Livingston Parish Jail by Rosenblum Mental Health Center.

A sanity commission report by Dr. Artecona dated October 15, 2016, recommended that Hinson receive further in-patient care at ELMHS for competency restoration. A competency assessment by Dr. Hale dated October 16, 2016, indicates that Hinson refused to take his prescribed medication in jail. Dr. Hale's assessment concluded that Hinson was still not competent to stand trial and should be returned to ELMHS for in-patient psychiatric care and competency restoration. In a pretrial commitment order dated November 18, 2016, Judge Hughes ordered that Hinson be readmitted to ELMHS.

Hinson returned to ELMHS in December 2016, and received additional treatment from a team of medical professionals under the direction of lead psychiatrist, Dr. Kelly. In a psychiatric evaluation dated December 9, 2016, Dr. Kelly recommended continuation of Hinson's Zyprexa prescription and random urinalysis. Dr. Kelly's progress notes dated December 2016 through January 2017 state that plaintiff's prescriptions for Zyprexa and Effexor, a medication used to treat depression, improved plaintiff's conditions when he was compliant with taking his medication. These same progress notes indicate that plaintiff received random drug screenings to address his substance abuse and was placed in the least restrictive environment possible for treatment of his symptoms. A forensic competency evaluation completed on January 30, 2017, by Drs. Kelly and Pamela Windham states that Hinson required continuation of his medications to remain reliably competent. A February

1, 2017 psychological evaluation report by Dr. Franklin Bordenave and ELMHS Assistant Administrator Hampton Lea determined that Hinson was competent to proceed with his criminal matters and assist his counsel. A discharge summary completed on February 3, 2017, by Dr. Kelly and licensed clinical social worker Paulette Early indicates that Hinson was discharged to the Livingston Parish Jail on that same date with a 15-day medication supply.

A progress report by Dr. Kelly indicates that Hinson entered a guilty plea in May 2017 and was released from jail, but was re-arrested in May 2018 for possession of methamphetamine. A sanity commission was ordered by Judge Hughes on June 4, 2018. A competency report by Dr. Hale dated June 14, 2018, concluded that Hinson lacked sufficient capacity to proceed at trial. A July 5, 2018 sanity commission report by Dr. Artecona concluded that Hinson was not competent to proceed at trial or assist his counsel, and recommended transfer to ELMHS for psychiatric stabilization, treatment and competency restoration. A pretrial commitment order issued by Judge Hughes on July 26, 2018, ordered Hinson to return to ELMHS.

On August 7, 2018, plaintiff was readmitted to ELMHS to receive further evaluation and treatment. Progress notes dated August 2018 through July 2019 indicate that plaintiff was treated by a team of psychiatrists, psychologists, social workers and counselors – with no indication that defendant Dr. Ahmed was involved – under the direction of Dr. Kelly, who continued Hinson's previous treatment regimen of random urinalysis and placement in a non-restrictive environment. Hinson was again prescribed Zyprexa/Zyprexa Zydis and Effexor

by Dr. Kelly, who additionally prescribed plaintiff with Lisinopril and Clonidine to treat his hypertension. Dr. Kelly's progress notes from August 2018 through July 2019 indicate that Hinson consistently refused to take Zyprexa as prescribed. Dr. Kelly's progress notes dated September 13 and 20, 2018, state that plaintiff requested Wellbutrin to treat his mental conditions in lieu of Zyprexa. Dr. Kelly's progress notes from September 13, 2018, indicate that Wellbutrin is a restricted medication at ELMHS.

In an administrative report completed on October 19, 2018, Dr. Bordenave states that authority was given to administer Zyprexa against Hinson's will. A psychiatric evaluation report dated May 23, 2019, by Dr. Bordenave and Assistant Administrator Lea determined that Hinson was not competent to proceed with his criminal matters or assist his counsel. Hinson's most recent progress notes dated July 29, 2019, by Dr. Brannon Wiedemann indicate that plaintiff's treatment plan and prescriptions listed above remained unchanged and that plaintiff still refused to take his anti-psychotic medication as prescribed.

III.    ANALYSIS

A.    Prescription Bars Plaintiff's Claims Against Dr. Ahmed

Hinson claims that Dr. Ahmed abused his physician's license, breached an unspecified injunction, committed medical malpractice, caused plaintiff to suffer negligent infliction of emotional distress during his medical treatment and "falsified" documents. He alleges that Dr. Ahmed's actions violated his constitutional rights. These claims are prescribed by the applicable statute of limitations.

The district court may raise the limitations or prescription issue sua sponte in a suit filed in forma pauperis under 28 U.S.C. § 1915. Wilke v. Meyer, 345 F. App'x 944, 945 (5th Cir. 2009); Lopez-Vences v. Payne, 74 F. App'x 398, 2003 WL 22047325, at *1 (5th Cir. 2003) (citing Gartrell v. Gaylor, 981 F2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" Stanley v. Foster, 464 F.3d 565, 568 (5th Cir. 2006) (quoting Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999)).

Although Section 1983 has no statute of limitations, the one-year Louisiana prescription statute, Louisiana Civil Code article 3492, applies to suits brought in federal court under Section 1983.

> Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims. In Louisiana, personal injury claims are governed by La. Civ. Code Art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.

Duplessis v. City of New Orleans, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (citing Wallace v. Kato, 549 U.S. 384, 387 (2007); Wilson v. Garcia, 471 U.S. 261, 275 (1985); Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Moore, 30 F.3d at 620; Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989)); accord James v. Branch, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009) (citations omitted).

Federal law determines when a Section 1983 claim accrues. Jacobsen, 133 F.3d at 319.

> For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which

forms the basis of his action. The Supreme Court has held that prescription
begins to run at the point when "the plaintiff can file suit and obtain relief."

Duplessis, 2009 WL 3460269, at *5 (quoting Wallace, 549 U.S. at 388) (citing Jacobsen, 133

F.3d at 319; Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998)); accord Dixon v.

Cooper, 260 F. App'x 728, 729 (5th Cir. 2007); Piotrowski v. City of Houston, 51 F.3d 512,

516 (5th Cir. 1995). Determination of when plaintiff knew or should have known of the

existence of a possible cause of action has two factors: "(1) [t]he existence of the injury; and

(2) causation, that is, the connection between the injury and the defendant's actions." Id.;

accord Dixon, 260 F. App'x at 729.

Plaintiff's verified medical records establish that the alleged injuries upon which

Hinson bases his claims occurred on May 6, 2016, when Hinson visited Dr. Ahmed for

medical treatment upon his initial arrival at ELMHS. The medical records indicate that

Hinson did not see Dr. Ahmed for further treatment after May 6, 2016. As the patient who

received the medical treatment about which he complains, there is no question that Hinson

knew about the alleged injuries and the connection between Dr. Ahmed's actions and the

alleged injuries on May 6, 2016, or soon thereafter.

The date when the clerk of court receives the complaint, rather than the formal filing

date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma,

831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, a "mailbox rule"

applies, so that the date when prison officials receive the complaint from the prisoner for

delivery to the court is considered the time of filing for limitations purposes. United States

v. Petty, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); Stevenson v. Anderson, 139 F. App'x 603, 604 (5th Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).

Hinson's complaint in this lawsuit was tendered for filing to the clerk of this court on May 2, 2019. Record Doc. No. 1 (Deficient Complaint). If the mailbox rule applicable to prisoner suits was applied, Hinson's current lawsuit would be deemed filed in this court on April 30, 2019, the date he signed his complaint. Id. at p. 6. This is the earliest date appearing in the record on which Hinson could have delivered his complaint to prison officials for mailing. Thus, even under the mailbox rule, Hinson's complaint is considered to have been filed and this action commenced at the earliest on April 30, 2019, nearly three years after the subject medical treatment occurred. Accordingly, the one-year prescriptive period applicable to Section 1983 claims bars all causes of action about which Hinson knew or had reason to know before April 30, 2018, one year before the filing date. Because Hinson knew or should have known about the alleged injuries and the connection between Dr. Ahmed's actions and the alleged injuries on May 6, 2016, or soon thereafter, all of his claims are prescribed.

In addition to applying the forum state's statute of limitations, federal courts should give effect to any applicable tolling provisions provided by state law. Lopez-Vences, 74 F. App'x at 398; Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Gartrell, 981 F.2d at 257. The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause that prevented the courts or

their officers from taking cognizance of or acting on the plaintiff's action; (2) if there was some condition coupled with the contract or connected proceeding that prevented the creditor from suing or acting; (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Dominion Explor. & Prod. Inc. v. Waters, 972 So. 2d 350, 358 (La. App. 4th Cir. 2007) (citing Wimberly v. Gatch, 635 So. 2d 206, 211 (La. 1994); Plaquemines Parish Comm'n Council v. Delta Dev. Co., 502 So. 2d 1034, 1054–55 (La. 1987)). Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." Pracht v. City of Shreveport, 830 So. 2d 546, 551 (La. App. 2d Cir. 2002).

Hinson has provided no reason and I can conceive of no basis on which the doctrine of contra non valentem or equitable tolling might apply to Dr. Ahmed's medical treatment of plaintiff on May 6, 2016. There is no legal cause that prevented the courts from taking cognizance of or acting on Hinson's action. There is no condition coupled with a connected proceeding that prevented plaintiff from filing this lawsuit. On the contrary, the six (6) other Section 1983 cases filed by plaintiff in this court and the Middle District of Louisiana indicate that plaintiff suffers from no impediment to filing lawsuits of this nature. Defendant did nothing to prevent Hinson from availing himself of his causes of action. Finally, the present causes of action were known or reasonably knowable to Hinson, as discussed above.

Thus, for all of the foregoing reasons, plaintiff's claims against Dr. Ahmed are barred by the applicable statute of limitations.

B.    Failure to Exhaust Medical Malpractice Claim

Construed broadly, plaintiff's complaint asserts claims for negligence and abuse of a physician's license by a doctor in the course of his medical treatment of a patient; i.e., medical malpractice. Under the Louisiana Medical Malpractice Act, "no action for malpractice against a qualified health care provider . . . may be commenced in a court of law before the complaint has been presented to a medical review panel and the panel has rendered its expert opinion on the merits of the complaint, unless the parties agree to waive this requirement." Hutchinson v. Patel, 637 So. 2d 415, 419 (La. 1994) (citing La. Rev. Stat. § 40:1299.47). Hinson has neither alleged nor provided any evidence that he submitted his claim against Dr. Ahmed to a medical review panel or that the parties agreed to waive this requirement, as required by the Louisiana Medical Malpractice Act, before he filed his complaint in this court. Therefore, plaintiff's complaint must be dismissed as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) based on his failure to exhaust administrative remedies under the Louisiana Medical Malpractice Act. Marcel v. Rehabcare Group, Inc., 2008 WL 4657258, at *2 (E.D. La. Oct. 20, 2008) (citing La. Rev. Stat. § 40:1299.47(B)(1)(a); La. Code Civ. Proc. art. 933; Englande v. SmithKline, 206 F. Supp. 2d 815, 817 (E.D. La. Feb. 8, 2002); Brister v. Sw. La. Hosp. Ass'n, 624 So. 2d 970 (La. App. 3d Cir. 1993)); Williams v. Bristol-Myers Squibb Co., 2003 WL 328310, at *1 (E.D. La. Feb. 12, 2003); Williams v. Notami Hosps. of La.,

14

Inc., 927 So. 2d 368, 372–73 (La. App. 1st Cir. 2005); Lewis v. Crossman, 582 So.2d 991, 992–94 (La. App. 1st Cir. 1991).

 C. Inadequate Medical Care Claims

 Very broadly construed, the complaint asserts constitutionally inadequate medical care claims against Dr. Ahmed and other non-defendant medical professionals and jail officials during his treatment at ELMHS and his incarceration at the Livingston Parish Jail. Hinson was a pretrial detainee during the entire time period about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir.1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

 In Hare, however, as set out above, the Fifth Circuit held

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." <u>Id</u>. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), will apply. <u>Shepherd v. Dallas County</u>, 591 F.3d 445, 452 (5th Cir. 2009) (citing <u>Bell</u>, 441 U.S. at 539; <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769–70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under Section 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 105–06; <u>accord</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate

it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious;' a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendant "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris, 198 F.3d at 159; Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458–59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368

(2010) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001))

(emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted))(emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Hinson must allege facts sufficient to establish that Dr. Ahmed and the non-defendant medical professionals and jail officials knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it.

Even assuming, without concluding, that plaintiff's above-described mental and physical conditions presented serious medical needs for constitutional purposes, the medical records negate any inference of deliberate indifference by Dr. Ahmed or any other non-defendant medical professional or jail official involved with plaintiff's incarceration at the

Livingston Parish Jail or his in-patient medical treatment at ELMHS. The verified medical records confirm that Hinson received constitutionally adequate medical care at ELMHS, including psychiatric examinations, random drug screenings and placement in non-restrictive environments conducive to treatment of his symptoms from Dr. Ahmed and a multi-disciplinary team of psychiatrists, psychologists, nurses, social workers and counselors. In addition, Dr. Ahmed and subsequent treating physicians provided plaintiff with a robust prescription regimen to treat his medical conditions. The records further indicate that Hinson received continued medical treatment and medications while incarcerated at the Livingston Parish Jail. In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard as to his treatment by Dr. Ahmed or any other non-defendant medical professional or jail official during his multiple in-patient stays at ELMHS and his incarceration at the Livingston Parish Jail.

Hinson's medical records show that during his most recent in-patient stay at ELMHS plaintiff refused to take Zyprexa/Zyprexa Zydis medication and requested Wellbutrin instead. Contentions like Hinson's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. Rowe v. Norris, 198 Fed. App'x 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Williams v.

Browning, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

Hinson's complaints in this case about his medical care fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish deliberate indifference under the applicable constitutional standard. Thus, plaintiff's complaints about his medical care must be dismissed because they advance a legally frivolous argument and/or fail to state a claim for relief based upon violation of his constitutional rights under Section 1983. 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

## **RECOMMENDATION**

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous, and/or for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____6th_____ day of January, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.